### JACKSON et al. v. WILKERSON et al.

(Circuit Court of Appeals, Eighth Circuit. March 27, 1908.)

No. 2,493.

1. JUDGMENT—ANNULMENT—FRAUD.

The fraud for which a suit may be maintained to annul a judgment or decree between the same parties must be extrinsic or collateral to the matter tried in the court rendering the judgment, and not one that inhered in the issues of the prior suit.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 30, Judgment, §§ 836–840.]

2. SAME—RES JUDICATA.

Where a suit in the federal courts to annul a judgment of the probate court of F. county, Ark., allowing certain claims against a decedent's estate for fraud, was between the same parties as a prior suit in an Arkansas chancery court to set aside the allowance of such claims, and all the allegations of fraud charged were necessarily involved in such prior suit, in which an adverse decree was rendered, such decree was res judicata of complainant's right to a retrial of such issue in the federal court.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 30, Judgment, §§ 1248–1250.]

Appeal from the Circuit Court of the United States for the Eastern District of Arkansas.

George B. Webster and John R. Beasley, for appellants.

N. W. Norton (R. W. Nichols and R. J. Williams, on the brief), for appellees.

Before SANBORN, HOOK, and ADAMS, Circuit Judges

HOOK, Circuit Judge. This was a suit begun in 1902 by Mary E. Jackson and others, heirs of Hiram Evans, deceased, to annul on the

ground of fraud a judgment of the probate court of St. Francis county, Ark., allowing two claims of Wilkerson & Co. against the estate of the deceased. One claim was upon a note for $3,353.33, dated January 1, 1891, signed H. Evans & Co., the other upon an account for $1,061.67 accruing after the date of the note and prior to the death of Hiram Evans. Hiram Evans died April 13, 1891, and James, his son, was appointed administrator of his estate a few days later. Wilkerson & Co. exhibited their demands March 5, 1892, and they were allowed.

The averments of fraud and failure of complainants to discover it during the nine years or so after the allowance of the claims are substantially as follows: That the note was not executed by Hiram Evans or by any one authorized to bind him; that he never received any consideration for it, and that it was paid long before the demand thereon was exhibited in the probate court; that John Evans, a son of Hiram, having acquired title to a drug store, sold it in March, 1887, to a firm styled Davis & Co., who in operating it became indebted to Wilkerson & Co., and John Evans having been compelled to take the store back sold it to his father, Hiram, without disclosing the indebtedness from Davis & Co. to Wilkerson & Co.; that "thereafter and until the time of his death the said Hiram Evans owned and conducted the said business and that no other person or persons whomsoever had any share or beneficial interest therein"; that about March 25, 1891, Wilkerson & Co. induced John Evans to execute the note in controversy, to date it back to January 1, 1891, and to sign it H. Evans & Co. in discharge of the indebtedness of Davis & Co. to Wilkerson & Co. for which neither John Evans nor his father, Hiram, were liable; that in May, 1891, after the death of Hiram, James Evans, as administrator, John Evans, and Wilkerson & Co. entered into an agreement pursuant to which the drug store was transferred from the estate of Hiram to John Evans, and as part of the transaction Wilkerson & Co. accepted John as their debtor not only upon the note, but also upon the open account, and thereupon the estate of Hiram became forever released and discharged from liability. This latter is what is termed the novation agreement, and for brevity it will hereafter be so referred to. It was further charged that notwithstanding these facts Wilkerson & Co. subsequently conspired and confederated with James, the administrator, to procure the allowance of both note and account as claims against Hiram's estate, and having corruptly concealed the truth from the probate court their purpose was consummated and the claims were allowed; that about December 25, 1896, James, the administrator, died without having finally settled the estate, and about March 1, 1900, the heirs discovered among his effects evidence of the fraud perpetrated; that a proceeding was instituted in the probate court by the administrator de bonis non for the sale of real property of the estate to pay debts including those due Wilkerson & Co., and while it was pending on appeal in the circuit court of St. Francis county the complainants having discovered the fraud asserted it by way of cross-bill; but the Supreme Court of Arkansas finally decided that neither the probate court nor the circuit court on appeal had jurisdiction in equity, and therefore com-

plainants failed in their cross-bill, but without prejudice to an original suit in equity in a court of competent jurisdiction.

It will be recalled that the fraud charged was the corrupt concealment of two things by Wilkerson & Co. and the administrator from the probate court when the claims were allowed: first, that Hiram Evans was never liable upon the note and account, and, second, that there was a novation whereby John Evans was accepted as sole debtor. If it should be found there was no corrupt concealment, or that in fact Hiram Evans was liable and there was no novation, or that regardless of the actual facts there had been an assertion by the heirs of the same defenses in a court of competent jurisdiction followed by a valid adjudication adverse to them, their present bill of complaint to set aside the allowance was properly dismissed.

In their answer Wilkerson & Co. averred that at the time of and long prior to his death Hiram Evans as H. Evans & Co. owned the drug store, and John Evans managed the business for him; that John Evans in the course of the business signed the note in question with full authority from his father. They denied that the note was without consideration, that Davis & Co. ever had anything to do with it and that it had ever been paid. They also denied there was a novation by which John Evans was accepted as the debtor and the estate of Hiram discharged, and they set forth what they claimed the actual transaction was. They averred their claims were just claims against Hiram Evans and his estate and were lawfully allowed by the probate court without fraud or collusion of any kind. Referring to the decision of the Supreme Court of Arkansas mentioned in the bill, Wilkerson & Co. averred that the complaining heirs had brought a plenary suit in equity such as was held by the Supreme Court of Arkansas to be their appropriate remedy, in the chancery court of St. Francis county, in which they sought to annul the allowance of the claims by the probate court upon the precise grounds now urged in the present suit; but the chancery court decided against them and its decree was affirmed by the Supreme Court of Arkansas. Wilkerson & Co. therefore asserted the matters in issue in the present suit were res adjudicata. The identity of the parties and the issues and the final result of that litigation appear from copies of the pleadings and decrees in the record, and such identity and result are not denied. The following appears from the decree of the chancery court:

"The court finds that there was no fraud nor collusion between the administrator, James Evans, and the several persons having claims against the estate or any of them; that there was no novation of the debt due W. N. Wilkerson & Co. from the estate of H. Evans, deceased, and that the drug store was operated by the administrator with the consent of such of the plaintiffs as were then adults, and that W. E. Evans, then a minor, has since ratified the operation of the drug store by the administrator, by joining with the other heirs in an application to the St. Francis probate court to have the administrator account for the receipts of such store. It is therefore by the court considered, ordered, and decreed that the plaintiff's bill of complaint be and the same is hereby dismissed for want of equity."

The parties here were parties to that suit, and the issues were the same, so if that were all it would follow that the charge of fraud in the original allowance of the claims by the probate court in 1892

160 F.—40

was forever at rest. But on September 6, 1905, complainants filed an amendment to their original bill in the present suit in which they charged that the decree of the chancery court was itself obtained by fraud. We will proceed at once to examine the grounds of attack upon this last decree and the evidence relating to them. It is charged the decree of the chancery court was obtained by fraud because (1) a member of the firm of Wilkerson & Co. and their attorney destroyed two notes given the firm in 1892 by John Evans pursuant to the novation agreement. But this very fact was before the chancery court. The member of the firm referred to testified to the transaction. He said the notes were regarded as worthless because the contract under which Wilkerson & Co. received them from John Evans had not been carried out and they were therefore destroyed. The chancery court before which the issue of fraud was being tried was not deceived. Knowing all that is now asserted it nevertheless held there was no novation. (2) The destruction by Wilkerson & Co.'s attorney of the bill of sale of the drug store given in 1892 by James Evans, administrator, to John Evans pursuant to the novation agreement. But this fact, like the other, was before the chancery court. The attorney testified he saw the bill of sale in his office some months before, had since hunted for it, could not find it and had probably burned it up with other papers, though unintentionally. (3) The suppression and concealment by James Evans of the bill of sale whereby John Evans in May, 1892, transferred the drug store back to James as administrator. James Evans was a defendant in the suit in the chancery court but his testimony clearly showed his favor to his relatives, the complainants. He testified that John transferred the drug store back to him by bill of sale. On cross-examination he was asked by counsel for Wilkerson & Co. where the bill of sale then was, but he said he did not know. Counsel for complaining heirs did not ask him where it was, and no one asked him to hunt for it. After James died the bill of sale was found among his papers by the husband of one of the complainants, and it contained a full verification of the contention of Wilkerson & Co. that there was no novation. It showed that James, as administrator, transferred the drug store to John upon condition that the latter pay the indebtedness of the estate connected with the business, and that the title should not pass to him until all of it was paid; also that John had failed to pay and therefore the transaction was rescinded and the property transferred back to the administrator. The effect of this was to leave Wilkerson & Co. with their claims against the estate. (4) The false testimony of a member of the firm of Wilkerson & Co. in relation to the extent of the novation agreement. But what the testimony was and wherein it was false is not set out in the pleading. (5) The false testimony of counsel for Wilkerson & Co. in denying he ever heard of the bill of sale from John back to James, the administrator. It is true counsel testified in the chancery court about four years after the bill of sale was executed that he never saw any such instrument that he knew of and never heard it alluded to. When it was found some years later among the papers of the administrator it was discovered to be in the handwriting of counsel. It is fair to presume, however, that he forgot the details of the transaction, and

that the writing was his. Had the instrument been found and produced it would have supported the contention of his clients.

There is another view: To maintain this suit is to try for the third time the question whether the note and account were just demands against the estate of the deceased, and for the second time the question of fraud in procuring the allowance in the probate court. The very matters now relied on were involved in the inquiry in the chancery court. It is the rule that the fraud for which a suit may be maintained to annul a judgment or decree between the same parties must be extrinsic or collateral to the matter tried by the first court, and not one that inhered in the issues of the prior suit. In United States v. Throckmorton, 98 U. S. 61, 68, 25 L. Ed. 93, the court said:

"That the mischief of retrying every case in which the judgment or decree rendered on false testimony given by perjured witnesses, or on contracts or documents whose genuineness or validity was in issue, and which are afterwards ascertained to be forged or fraudulent, would be greater, by reason of the endless nature of the strife, than any compensation arising from doing justice in individual cases."

See, also, Ritchie v. McMullen, 25 C. C. A. 50, 79 Fed. 522.

One other feature of the case may be noticed. In the amendment of their bill, filed more than 14 years after the death of Hiram Evans, complainants averred for the first time that he never was the owner of the drug store and had no title thereto, the inference to be drawn being that he could not have been liable to Wilkerson & Co., whose claims arose from the conduct of that business. What has already been said disposes of this contention, but we may add that it is contrary to the position taken by complainants in the original bill, in their complaint in the chancery suit, and in their various written representations to the probate court. It is also contrary to the course of the administration of the estate, the solemn acts and assertions of the administrator and of the heirs themselves. We are also of the opinion the evidence shows Hiram Evans was in fact the owner of the drug store and was liable for Wilkerson & Co.'s demands.

The decree is affirmed.